CULLEN WALSTON, EMPLOYEE, PLAINTIFF v. BURLINGTON INDUSTRIES, EMPLOYER, AND LIBERTY MUTUAL INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 116

(Filed 12 January 1982)

**Master and Servant § 68— workers' compensation—insufficient evidence of occupational disease**

The evidence supported findings by the Industrial Commission that plaintiff does not have an occupational disease and that his shortness of breath is due to pulmonary emphysema and chronic bronchitis where the expert medical testimony tended to show that plaintiff suffers from chronic bronchitis, pulmonary emphysema, and "possible byssinosis," that plaintiff did not have a classical history of byssinosis, that smoking "was almost certainly the primary etiologic agent," and that there was only a "possibility" that any portion of plaintiff's disability was caused by the inhalation of cotton dust.

ON discretionary review of decision of the Court of Appeals, 49 N.C. App. 301, 271 S.E. 2d 516 (1980), reversing the decision and award of the Industrial Commission denying compensation. This case was docketed and argued as No. 118 at the Spring Term 1981.

On 26 August 1976 plaintiff filed claim with the Industrial Commission alleging that his exposure to cotton dust while working at Burlington Industries caused him to develop an occupational disease, byssinosis, which had resulted in permanent and total disability.

At a hearing before Commissioner Brown in Lillington on 25 July 1977, plaintiff testified that he was born on 7 October 1910, worked continuously for defendant employer from 2 February 1942 until he retired on 17 March 1972 due to breathing problems. He first noticed trouble with his breathing after he had worked for Burlington about eight or ten years. He went to hospitals in Chapel Hill and Durham in 1962 or 1967 for tests and treatment. He was told at Duke Hospital that he had bronchial and asthma trouble and had a severe case of emphysema. During the latter years of his employment he was also treated by Dr. Mabe in Erwin. He said he began smoking cigarettes when he was fourteen or fifteen years of age, averaged about a half a pack a day, stopped for about two years and then resumed the habit. At the time of the hearing in Lillington he was still smoking about a pack a day.

Mrs. Walston testified that her husband developed breathing problems about eight to ten years after he started working for Burlington Industries. He was taken to a clinic at Duke where it was determined that he had bronchial asthma and chronic bronchitis. She said Dr. Mabe admitted Mr. Walston to the hospital the day after he terminated his employment.

Dr. Mabe testified that he treated Mr. Walston for "pulmonary emphysema, chronic pulmonary obstructive disease, or if you wish to call it chronic pulmonary fibrosis." Dr. Mabe said he assisted plaintiff in obtaining retirement and Social Security disability benefits by reason of plaintiff's breathing problems. It was Dr. Mabe's opinion that plaintiff was totally disabled due to his pulmonary disease.

A second hearing was conducted before Chief Deputy Commissioner Shuford in Charlotte on 6 February 1978 at which Dr. Charles D. Williams was the only witness to testify. Dr. Williams is a specialist in pulmonary diseases and is a member of the North Carolina Industrial Commission's panel on byssinosis and pulmonary diseases. He examined plaintiff on 28 January 1977 and diagnosed his difficulties as chronic bronchitis, pulmonary em-

physema, possible byssinosis and mild diabetes. It was the opinion of Dr. Williams that plaintiff could not carry out any type of occupation which required any significant amount of physical exertion. When asked whether plaintiff's respiratory diseases were due to causes and conditions peculiar to his textile employment and to which the general public is not equally exposed, Dr. Williams replied: "I don't think we could exclude the possibility, if it were indeed dusty in the cloth room where this man was employed, that it could have played a role in the etiology of his problems. . . . The cloth room is reputed to be a fairly clean area of the mill as far as dust is concerned. There have been reports of chronic obstructive pulmonary disease occurring in persons working with the preparing of cloth, such as slashers, etc., but the cloth room type of work that's being described here is supposed to be a fairly dust-free environment." When asked whether the lung disease he diagnosed was due to causes and conditions more characteristic of the textile industry than other industrial environments, the *doctor replied:* "I think that it is." When asked whether plaintiff's exposure to cotton dust for thirty years in his employment could have caused his respiratory disease, Dr. Williams replied: "My *opinion is that it could possibly have* played a role in the causation of his pulmonary problems. I feel that it would be, if it did, it would be more likely a contributory role rather than a single cause and effect relationship." Dr. Williams said that plaintiff's inability to work was caused by "pulmonary disease."

On cross-examination, Dr. Williams testified that plaintiff's cigarette smoking habit "would *most likely* play a part in his pulmonary disability." Dr. Williams said that plaintiff did not have a "classical history" of byssinosis. By way of explanation, he said:

> For the record, 'classic history' of byssinosis, that of textile workers, is that after having worked for several years, the worker begins to notice symptoms on Monday morning, after being back at work for a short period of time, symptoms of chest tightness, shortness of breath, sometimes coughing, wheezing and sputum production, the symptoms usually being improved on Tuesday and the rest of the week, but after a number of years the symptoms become more persistent throughout the rest of the week, until finally the

symptoms are more or less chronic. This history is part of the diagnosing of byssinosis.

This man did not have a completely classical history. He did give a history that he was bothered by dust and lint in the mill which produced symptoms of chest tightness, shortness of breath, coughing and wheezing, and he noticed symptoms just as soon as he walked back into the mill on Monday morning, but the symptoms persisted and were just as bad the remainder of the week. That history caused me to have some doubts as to whether or not he did have true byssinosis.

Dr. Williams was unable to testify regarding the relative contributions to Mr. Walston's lung disease attributable to (1) his exposure to cotton dust and (2) his cigarette smoking. In that connection, he said:

I find it very difficult to answer the question as to . . . what percentage would the cotton dust exposure represent to the pulmonary condition. On the one hand, we have had the opportunity to treat hundreds of patients with this same type of syndrome and findings, in which case it is almost certain the primary etiological agent was cigarette smoking, and this fellow was a smoker. On the other hand, there are figures beginning to emerge to show that it is possible for workers exposed to cotton dust to develop chronic obstructive lung disease even in some instances in non-smokers even though the incident is definitely greater in smokers which accounts for the reason I said it might be a contributory factor, but this is about as close as I can come. I cannot give a percentage. I don't have an opinion on a specific percentage.

A written report which Dr. Williams had sent to Liberty Mutual Insurance Company was admitted into evidence by stipulation of the parties. In that report, Dr. Williams listed his impressions of plaintiff's difficulties as:

1.  Chronic bronchitis.

2.  Pulmonary emphysema.

3.  Possible byssinosis.

4.  Suspected arteriosclerotic heart disease, asymptomatic.

5. Cloudiness of the right sclera with loss of vision, undetermined etiology.

6. Decreased hearing, right, undertermined etiology.

7. Epidermal phytosis toenails.

8. ? mild diabetes mellitus.

9. ? intrinsic asthma.

Dr. Williams explained his impressions as follows:

> Mr. Walston's symptoms of shortness of breath appear to be clearly related to pulmonary emphysema and chronic bronchitis and may be, at least in part, related to cigarette smoking. It is also possible that he has had intrinsic asthma which could be confirmed from old Duke Out-Patient Clinic records. With this syndrome, he could have noticed an aggravation of his symptoms by dust in the mill as described without necessarily invoking the diagnosis of byssinosis. The history for byssinosis is somewhat equivocal in that he did have exacerbation of symptoms on Monday morning but this occurred immediately on exposure to dust and did not seem to improve during the remainder of the week.

With the foregoing evidence before him, Commissioner Brown denied plaintiff's claim after making pertinent findings of fact and conclusions of law as follows:

> 3. About 1952, plaintiff began experiencing difficulty breathing on exertion at work. Due to difficulty of breathing, plaintiff transferred to a less strenuous job in 1958. Since 1962 plaintiff has had respiratory problems severe enough to keep plaintiff regularly under physicians' care, has been hospitalized or treated at various times at Memorial Hospital, Chapel Hill, Duke University Medical Center, and in hospitals in Dunn and in Erwin, North Carolina. He took occasional medical leaves of absence from his work due to breathing problems, stopped working in March 1972 due to difficulty in breathing. While in defendant's employ, plaintiff's shortness of breath began at the start of the work week, continued without respite through the week.

4. During the period beginning about 1962 and continuing until his retirement, plaintiff at various times has been ill due to bronchitis, emphysema, asthma, and chronic pulmonary fibrosis.

5. From the age of about fifteen, with an interruption of two years, plaintiff has smoked starting at about one-half pack per day, working up to one pack per day.

6. Plaintiff was examined in January of 1977 by Charles D. Williams, Jr., M.D., a specialist in the field of pulmonary medicine. From that examination, Dr. Williams gained an impression that plaintiff suffered from chronic bronchitis, pulmonary emphysema, *possible* byssinosis (emphasis added), these among nine impressions based on Dr. Williams' examination. Dr. Williams, in his written report, a part of the evidence in this case, gave the following comment:

> 'Mr. Walston's symptoms of shortness of breath appear to be clearly related to pulmonary emphysema and chronic bronchitis and may be, at least in part, related to cigarette smoking. It is also possible that he has had intrinsic asthma which could be confirmed from old Duke Out-Patient Clinic records. With this syndrome, he could have noticed an aggravation of his symptoms by dust in the mill as described without necessarily invoking the diagnosis of byssinosis. The history for byssinosis is somewhat equivocal in that he did have exacerbation of symptoms on Monday morning but this occurred immediately on exposure to dust and did not seem to improve during the remainder of the week.'

7. Plaintiff's shortness of breath is due to pulmonary emphysema and chronic bronchitis.

8. Plainiff does not have an occupational disease.

\*  \*  \*  \*

The foregoing engender additional

CONCLUSIONS OF LAW

1. Plaintiff has failed to carry the burden of proof that he has a disease due to causes and conditions characteristic

of and peculiar to his employment by defendant. G.S. 97-53(13).

2. Plaintiff is not entitled to benefits under G.S. 97.

Plaintiff appealed to the Full Commission. After reviewing the evidence, the Full Commission adopted as its own the findings, conclusions and denial of compensation by Commissioner Brown. In doing so, the Full Commission noted:

The medical evidence in this case regarding the cause of plaintiff's pulmonary condition came from Dr. Charles D. Williams, Jr., of Charlotte, medical expert specializing in pulmonary diseases. While the doctor expressed the opinion that plaintiff's exposure to cotton dust 'could possibly' have played a role in causing the pulmonary problems, the doctor further was of the opinion that smoking by plaintiff 'most likely' played a part in causing the pulmonary disability.

Based upon such evidence it is the opinion of a majority of the Full Commission that Commissioner Brown was fully justified in concluding that plaintiff failed to carry the burden of proof that he had a disease due to causes and conditions characteristic of and peculiar to his employment by defendant.

A majority of the Full Commission therefore overrules the exceptions and assignments of error as filed by plaintiff and adopts as its own the opinion and award heretofore filed in this case by Commissioner Brown. The results reached by him be, and they are hereby, AFFIRMED.

Plaintiff thereupon appealed to the Court of Appeals, urging the following exceptions as error: (1) the finding of fact that plaintiff's shortness of breath was due to pulmonary emphysema and chronic bronchitis; (2) the finding of fact that plaintiff did not have an occupational disease; (3) the conclusion of law that plaintiff had failed to carry his burden of proof that he had a disease due to causes and conditions characteristic of and peculiar to his employment; and (4) the conclusion of law that plaintiff was not entitled to benefits under the Workers' Compensation Act.

Although the Court of Appeals concluded that the evidence supported the Commission's finding that plaintiff suffered from

pulmonary emphysema and chronic bronchitis, it further concluded that the Commission made its findings and conclusions under a misapprehension of law and, by reason of the misapprehension, failed to find the extent to which plaintiff's occupational exposure to cotton dust contributed to his lung disease. The court thereupon reversed the Commission and remanded the case for further findings on the issue of whether plaintiff's lung disease is compensable as an occupational disease. In that connection, the court said there was sufficient evidence to support findings that plaintiff's occupational exposure was of enough significance in causing the lung disease so as to make the disease occupational.

The Court of Appeals further noted that there was testimony which tended to show "that the diseases responsible for plaintiff's disability satisfy the statutory requirements of compensability. Its clear import is that: (1) the environmental conditions which characterize plaintiff's place of employment *are also substantial factors* in causing the diseases of which plaintiff suffers; and (2) plaintiff by virtue of his employment is exposed to such irritants in greater quantities than persons otherwise employed." See 49 N.C. App. at 309, 271 S.E. 2d at 521. (Emphasis supplied.)

We allowed defendants' petition for discretionary review of the decision of the Court of Appeals.

*Hassell & Hudson, by Robin E. Hudson, Attorneys for plaintiff appellee.*

*Teague, Campbell, Conely & Dennis, by C. Woodrow Teague, Richard B. Conely and George W. Dennis III, Attorneys for defendant appellants.*

*Smith, Moore, Smith, Schell & Hunter, by McNeill Smith and J. Donald Cowan, Jr., Attorneys for defendant appellants.*

HUSKINS, Justice.

We said in *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E. 2d 458 (1981):

Except as to questions of jurisdiction, the rule is that the findings of fact made by the Commission are conclusive on appeal when supported by competent evidence. This is so even though there is evidence to support a contrary finding

of fact. *Morrison v. Burlington Industries*, 301 N.C. 226, 271 S.E. 2d 364 (1980); *Inscoe v. Industries, Inc.*, 292 N.C. 210, 232 S.E. 2d 449 (1977); *Anderson v. Construction Co.*, 265 N.C. 431, 144 S.E. 2d 272 (1965); *Rice v. Chair Co.*, 238 N.C. 121, 76 S.E. 2d 311 (1953); *Henry v. Leather Co.*, 231 N.C. 477, 57 S.E. 2d 760 (1950). The appellate court does not retry the facts. It merely determines from the proceedings before the Commission whether sufficient competent evidence exists to support its findings of fact. *Moses v. Bartholomew*, 238 N.C. 714, 78 S.E. 2d 923 (1953).

*Id.* at ---, 282 S.E. 2d at 463. We first determine whether there is competent evidence to support the findings of the Industrial Commission.

All pertinent portions of the evidence in this case are set out in the statement of facts. The overwhelming thrust of that evidence is to the effect that Mr. Walston suffers from chronic bronchitis, pulmonary emphysema, asthma, "possible byssinosis," and chronic pulmonary fibrosis. When asked whether plaintiff's respiratory diseases and breathing problems were due to causes and conditions peculiar to his employment and to which the general public is not equally exposed, Dr. Williams said:

> I don't think we could exclude the possibility, if it were indeed dusty in the cloth room where this man was employed, that it could have played a role in the etiology of his problems. . . . The cloth room is reputed to be a fairly clean area of the mill as far as dust is concerned. . . . A fairly dust-free environment.

When asked whether plaintiff's exposure to cotton dust for thirty years in his employment could have caused his respiratory disease, Dr. Williams replied:

> My opinion is that it *could possibly* have played a role in the causation of his pulmonary problems. . . . [I]f it did, it would be more likely a contributory role rather than a single cause and effect relationship. [Emphasis supplied.]

Dr. Williams further testified that plaintiff's cigarette smoking would "most likely play a part in his pulmonary disability," adding that plaintiff did not have a classical history of byssinosis which raised doubts in his mind as to whether plaintiff had byssinosis in the first place. The doctor was unable to give per-

centages regarding the relative contributions to plaintiff's lung disease by (1) his exposure to cotton dust and (2) his cigarette smoking.

It thus appears that substantially all of the competent medical evidence tends to show that plaintiff suffers from several ordinary diseases of life to which the general public is equally exposed, none of which have been proven to be due to causes and conditions which are characteristic of and peculiar to any particular trade, occupation or employment and none of which have been aggravated or accelerated by an occupational disease. This is fatal to plaintiff's claim. G.S. 97-53(13); *Anderson v. Motor Co.,* 233 N.C. 372, 64 S.E. 2d 265 (1951).

There is little, if any, evidentiary support for the statement in the decision of the Court of Appeals that

> the diseases responsible for plaintiff's disability satisfy the statutory requirements of compensability. Its [the testimony's] clear import is that: (1) the environmental conditions which characterize plaintiff's place of employment *are also substantial factors* in causing the diseases of which plaintiff suffers; and (2) plaintiff by virtue of his employment is exposed to such irritants in greater quantities than persons otherwise employed.

(Emphasis supplied.) *See* 49 N.C. App at 309, 271 S.E. 2d at 521. The expert medical testimony does not establish that plaintiff has an occupational disease. While smoking "was almost certain[ly] the primary etiologic agent," there was only a "possibility" that any portion of plaintiff's disability was caused by the inhalation of cotton dust. Such evidence supports the findings and conclusions of the Commission that plaintiff failed to meet his burden of proof, *i.e.,* failed to prove that he had an occupational disease defined in G.S. 97-53(13). A mere possibility of causation is neither "substantial" nor sufficient. It must be shown that the disease in question is an occupational disease, *i.e.,* a disease which is due to causes and conditions which are characteristic of and peculiar to claimant's trade, occupation or employment as distinguished from an ordinary disease of life to which the general public is equally exposed outside of the employment. G.S. 97-53(13); *Duncan v. Charlotte,* 234 N.C. 86, 66 S.E. 2d 22 (1951). Disability caused by and resulting from a disease is compensable when, and only when,

the disease is an occupational disease, or is aggravated or accelerated by an occupational disease, or by an injury by accident arising out of and in the course of the employment. G.S. 97-53(13); *Morrison v. Burlington Industries,* --- N.C. ---, 282 S.E. 2d 458 (1981); *Booker v. Medical Center,* 297 N.C. 458, 256 S.E. 2d 189 (1979); *Anderson v. Motor Co.,* 233 N.C. 372, 64 S.E. 2d 265 (1951); *Henry v. Leather Co.,* 231 N.C. 477, 57 S.E. 2d 760 (1950). Here, the evidence does not satisfy those requirements because the requisite causal connection between plaintiff's diseases and his employment, as required by G.S. 97-53(13), has not been proven. Rather, it amply supports the Commission's findings that plaintiff does not have an occupational disease and his shortness of breath is due to pulmonary emphysema and chronic bronchitis. The findings are therefore conclusive on appeal.

For the reasons stated the decision of the Court of Appeals is reversed. The case is remanded to that court for further remand to the Industrial Commission for reinstatement of its award denying compensation.

Reversed and remanded.

Justices EXUM and CARLTON concur in the result.