ROBIE A. SWINK, Employee, Plaintiff v. CONE MILLS, INC., Employer, and LIBERTY MUTUAL INSURANCE COMPANY, Carrier, Defendants

No. 8210IC408

(Filed 5 April 1983)

**Master and Servant § 68— workers' compensation—chronic obstructive pulmonary disease—failure to show exposure to cotton dust as cause**

> Plaintiff failed to meet his burden of proof that his chronic pulmonary disease and disability are the result of his exposure to cotton dust in his employment with defendant employer and that he thus has an occupational disease where plaintiff's expert medical witnesses were virtually unanimous in their testimony that plaintiff's cigarette smoking was a major causative factor in his chronic obstructive pulmonary disease and expressed the opinion only that plaintiff's disease "could have" or "may have" been aggravated by exposure to cotton dust, since the mere possibility of causation is not sufficient to establish an employee's disease as an occupational disease.

APPEAL by plaintiff from the North Carolina Industrial Commission. Opinion and award filed 25 November 1981. Heard in the Court of Appeals 18 February 1983.

Plaintiff filed a claim for disability benefits under the Workers' Compensation Act alleging he was suffering from an occupational disease caused by exposure to cotton dust. Commissioner Coy M. Vance denied compensation in a decision filed 6 February 1981 and his decision was adopted and affirmed by the Full Commission on 25 November 1981. Plaintiff appeals.

*Hassell, Hudson and Lore, by Charles R. Hassell, Jr., for plaintiff-appellant.*

*Hedrick, Feerick, Eatman, Gardner & Kincheloe, by Philip R. Hedrick, for defendants-appellees.*

HILL, Judge.

Plaintiff argues that the Industrial Commission erred as a matter of law in denying his claim for compensation.

Commissioner Vance found, in pertinent part, the following facts:

1. Plaintiff is a male employee, 76 years of age and went to work for defendant employer in 1926. . . .

2. Plaintiff worked in the finishing room which was next to the Weaving Department. . . .

. . . .

4. At the end of each day, he used a flop, like a mop, to clean lint off the machines. There was usually between a peck and a half bushel of lint to sweep up. In the latter years, plaintiff used an air hose to blow off the machines. There was no air conditioning system.

5. There was dust in the air continuously and you could write your name most any place where dust and lint had settled.

6. In 1947, plaintiff discovered he had tuberculosis and left his employment for treatment and returned to work for the same employer in 1950. He . . . was given a clean bill of health from the disease.

7. Plaintiff had smoked some since he was about ten years old. He now smokes six cigarettes a day and never more than one-half pack a day.

8. In 1955, plaintiff started having a hurting in the breast, spitting up cotton lint and dust and began to choke up. He did not go to the doctor . . . . He does not remember any Monday Morning Syndrome.

9. Plaintiff's last day of work was April 7, 1967 and he has been unable to work since that day. He does some house work. When he walks to the mailbox, which is two hundred feet away from the house, he must sit and rest before he can return.

10. Plaintiff went to see Dr. Cecil M. Farrington for the first time on July 19, 1978. Dr. Farrington diagnosed his condition as "chronic obstructive pulmonary disease". He tried, but was unable, to blow enough air to move the graph high enough to make a readable graph in the pulmonary function studies. He has no asthma.

11. Defendants were ordered to pay for plaintiff's examination by a panel physician, Douglas G. Kelling, Jr., and plaintiff was examined on May 24, 1979. . . . He felt that plaintiff had some chronic obstructive lung disease which could not be confirmed by pulmonary function testing. On the basis of his history, Dr. Kelling felt that the chronic obstructive lung

disease was due to cigarette smoking, tuberculosis, and felt that allergies may play a part in his illness. The x-rays revealed that there is evidence of healed calcified granulomotous disease with minimal parenchymal scarring and slight overexpansion of the lungs consistent with chronic obstructive pulmonary disease. There is no evidence of active chest disease. Because of the inability to do pulmonary function tests, it would be very difficult to determine if this man were disabled because of lung disease. According to information plaintiff gave the doctor, he retired because of shortness of breath. One could at least suggest that the lung disease may be causing some element of disability. Dr. Kelling felt that plaintiff's chronic bronchitis may have been aggravated by cotton dust and may have produced more coughing and sputum, but did not think the chronic lung disease was caused by cotton dust. Having previously had tuberculosis would not have made plaintiff more susceptible to hazards of cotton dust. Cotton dust and smoking could have aggravated his chronic bronchitis.

12. Plaintiff made an appointment on his own and was examined by Dr. Fred Owens, a panel physician, on October 29, 1979. Dr. Owens diagnosed plaintiff as having chronic obstructive pulmonary disease, but was of the opinion that in this particular case, the cotton dust exposure was a minor factor, but it could have aggravated it; that plaintiff is not completely disabled to all jobs, but is disabled to a point that he could not do any work in the mill because of his previous lung disease and the dusty atmosphere. He could have a sedentary-type job, not looking at his age, because of his age is another factor, and we're talking about disability. I could say probably unemployable.

13. Plaintiff's claim is one for byssinosis and/or chronic obstructive lung disease both of which are characterized by cough, chest tightness, shortness of breath, fatigue, and sometimes wheezing. Classically, it is worse on Monday when an employee returns to work after having been out on a weekend and his or her condition improves either on days off or on vacation. As the disease progresses, however, the employee continues to worsen throughout the workweek and

eventually sees no improvement when he leaves his work environment.

14. Byssinosis and/or chronic obstructive lung disease is due to chronic exposure to respirable cotton dust. It is, therefore, characteristic of and peculiar to the employment in the textile trade. The general public is not equally exposed outside the employment.

15. Plaintiff has chronic pulmonary disease. X-rays indicate that there is a flattening of the diaphragm. This is consistent with chronic obstructive lung disease.

16. Plaintiff's chronic pulmonary disease, coupled with his age, makes him unemployable and, therefore, he is totally disabled and has been since April 7, 1967.

17. Plaintiff has failed in his burden of proof to prove with medical evidence that his disability is a result of an occupational disease caused by cotton dust exposure in his employment with defendant employer.

18. Plaintiff's chronic pulmonary disease was aggravated by his exposure to cotton dust in his employment with defendant employer.

19. Plaintiff does not have an occupational disease due to causes and conditions characteristic of and peculiar to his employment with defendant employer.

From these facts the Commissioner concluded that plaintiff had failed to prove that his chronic pulmonary disease and disablement were a result of his exposure to cotton dust in his employment with defendant employer and therefore he did not have an occupational disease. His denial of plaintiff's claim for compensation was affirmed by the Full Commission.

The standard for appellate review of the findings of the Industrial Commission was succinctly set out if *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E. 2d 458 (1981):

Except as to questions of jurisdiction, the rule is that the findings of fact made by the Commission are conclusive on appeal when supported by competent evidence. This is so even though there is evidence to support a contrary finding

of fact. The appellate court does not retry the facts. It merely determines from the proceedings before the Commission whether sufficient competent evidence exists to support its findings of fact. [Citations omitted.]

*Id.* at p. 6, 282 S.E. 2d at p. 463.

Relying upon several recent decisions of the North Carolina Supreme Court, plaintiff contends that he is entitled to a remand for additional findings on the extent of his disability as defined by G.S. 97-2(9). He bases his argument on the findings of the Commission that (1) he has chronic pulmonary disease, (2) that he is totally disabled, and (3) that his chronic pulmonary disease was aggravated by his exposure to cotton dust in his employment with defendant employer. *See Hilliard v. Apex Cabinet Co.,* 305 N.C. 593, 290 S.E. 2d 682 (1982); *Walston v. Burlington Industries,* 304 N.C. 670, 285 S.E. 2d 822, *as amended in* 305 N.C. 296 (1982); *Hansel v. Sherman Textiles,* 304 N.C. 44, 283 S.E. 2d 101 (1981). We do not agree.

One of the circumstances under which compensation for disability caused by and resulting from a disease may be awarded is when the disease is aggravated or accelerated by causes and conditions characteristic or peculiar to claimant's employment. *Walston v. Burlington Industries, supra, as amended in* 305 N.C. 296, 297. However, as emphasized in *Walston,* in order to be entitled to compensation for disablement from an occupational disease, the claimant must carry his burden of proof in establishing the causal connection among the disability, the disease, and the employment. Plaintiff must establish:

> (1) that [the] disablement *results from an occupational* disease encompassed by G.S. 97-53(13), *i.e.,* an occupational disease due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment as distinguished from an ordinary disease of life to which the general public is equally exposed outside of the employment; and (2) the extent of the disablement *resulting from* said occupational disease, *i.e.,* whether [he] is totally or partially disabled *as a result of the disease. . . .* [T]hat means, in occupational disease cases, that disablement of an employee resulting from an occupational disease which arises out of and in the course of the employment, G.S. 97-52 and G.S.

97-2(6), is compensable and claimant has the burden of proof "to show not only . . . disability, but also its degree." *Hall v. Chevrolet Co.*, 263 N.C. 569, 575, 139 S.E. 2d 857, 861 (1965).

*Morrison v. Burlington Industries, supra* at 12, 13, 282 S.E. 2d at 466, 467 (1981).

We agree with the Commission that plaintiff failed to meet his burden of proof that his chronic pulmonary disease and disability are a result of his exposure to cotton dust in his employment with defendant employer. Plaintiff's witness, Dr. C. M. Farrington, testified that from his examination of plaintiff, chronic obstructive pulmonary disease could have been caused by cotton dust and cigarette smoking or that the disease could have been solely caused by plaintiff's cigarette smoking or emphysema.

Another medical witness, Dr. Kelling, testified by deposition that from his examination he felt plaintiff had some chronic obstructive lung disease which could not be confirmed by pulmonary function tests and he found no evidence of byssinosis. Dr. Kelling stated that, because of the inability to do pulmonary function tests, it would be very difficult to determine if plaintiff were disabled due to lung disease, but the fact that he retired due to shortness of breath would suggest that lung disease may be causing some element of disability. He further testified that, although plaintiff's chronic bronchitis may have been aggravated by cotton dust, he did not feel that his chronic obstructive lung disease was a result of his exposure. He felt the latter disease was more likely the result of plaintiff's cigarette smoking.

Dr. Fred T. Owens testified that he diagnosed chronic obstructive pulmonary disease in the plaintiff which could have been aggravated by exposure to cotton dust as a minor factor. Dr. Owens stated that cigarette smoking was the main factor in the development of plaintiff's lung disease.

The medical evidence above does not establish that plaintiff was disabled due to an occupational disease. Although the experts were virtually unanimous in their testimony that plaintiff's cigarette smoking was a major causative factor in his chronic obstructive pulmonary disease, the opinion was only that plaintiff's disease "could have" or "may have been" aggravated by exposure to cotton dust. The "mere possibility of causation" is not

sufficient to establish an employee's disease as an occupational disease under our Workers' Compensation statutes. *See Walston v. Burlington Industries, supra* at 679, 285 S.E. 2d at 828. The record is barren of any testimony which established the extent of plaintiff's disability resulting from an occupational disease or the extent to which his disability was aggravated or accelerated by causes and conditions characteristic of and peculiar to his employment with defendant. Plaintiff failed to authenticate the amount or degree of his disablement which resulted from any occupational disease arising out of and in the course of his employment with defendant employer. *See Morrison v. Burlington Industries, supra.* Since the evidence before us supports the Commission's findings, they are conclusive on appeal.

We find no merit in plaintiff's argument that Commissioner Vance committed prejudicial error by applying the language of G.S. 97-53(13) as it currently exists to plaintiff's claim which should have been analyzed under the statute as it existed in 1967. Since plaintiff has failed in his burden of proof that he is disabled as the result of an occupational disease, a requirement under either statute, we agree with the Full Commission that the erroneous application of the later statute is immaterial.

The opinion and award of the Commission is

Affirmed.

Judges WELLS and JOHNSON concur.