* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, modifies and affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between Plaintiff and Defendant at the time of alleged accident herein.
3. Defendant was self-insured at the time of alleged accident herein.
4. The date of the injury was on or about March 4, 2004; however, Defendant denies said injury was compensable under North Carolina Workers' Compensation Law.
5. At the hearing, the parties submitted a Packet of Various Stipulated Documents, including Industrial Commission Forms, Medical Records, Employment Records, Defendant's Response to Plaintiff's Second Set of Interrogatories, an Ergonomic Report, and an Opinion Letter from Dr. Anthony DeFranzo, which was admitted into the record and marked as Stipulated Exhibit (2).
6. The issues to be determined are: (a) whether Plaintiff sustained a compensable occupational disease as the direct and proximate a result of his employment with Defendant; and (b) whether Plaintiff's employment with Defendant accelerated or exacerbated his pre-existing infirmity or proximately contributed to Plaintiff's disability.
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, Plaintiff was thirty-eight years of age, having a date of birth of September 8, 1967, and was a high school graduate.
2. At the time of the filing of his claim, Plaintiff had worked for Defendant as a custodian at an assigned recreational center for approximately fifteen years. In his position with Defendant, Plaintiff's duties included sweeping, mopping, dusting, polishing, washing windows, washing baseboards, disposing of trash and removing gum from floors and bleachers. In the performance of his duties, Plaintiff was required to use a mechanized buffer on the floors and a machine to shampoo the carpet.
3. In addition to his duties associated with his assigned recreational center, Plaintiff also worked some overtime on weekends with a four-man crew stripping and waxing gym floors of several recreational centers located throughout Winston-Salem, North Carolina. According to Plaintiff, this overtime work was done on Saturdays and was generally performed during the first twelve to sixteen weeks of each year. Although he worked with a four-man crew, Plaintiff's overtime work at these other facilities usually included operating the stripping and buffing machinery, which necessitated the nearly constant gripping and twisting of his hands and wrists. Operating these machines also exposed Plaintiff to significant machinery vibrations. Plaintiff testified that he performed these overtime duties throughout the period of his employment with Defendant.
4. The Full Commission finds credible Plaintiff's testimony regarding his job duties for Defendant, and further finds Plaintiff's job duties required the nearly constant repetitive motion of his hands and wrists even though he performed different combinations of his duties each day. In addition, the Full Commission finds during the performance of his job duties, Plaintiff was exposed to repetitive vibrations in his hands and wrists while operating the mechanized cleaning equipment.
5. In late 2003, Plaintiff first reported pain in his wrists to his family physician, Dr. Richard L. Elsey, with Wake Forest University Baptist Medical Center. Dr. Elsey referred Plaintiff to Dr. Anthony DeFranzo for treatment of his hands and wrists. Dr. DeFranzo is an Associate Professor in the Department of Plastic and Reconstructive Surgery at Wake Forest University Baptist Medical Center. Dr. DeFranzo first examined Plaintiff on February 12, 2004. Plaintiff reported experiencing pain, numbness and tingling in the median nerve areas of his right and left hands. Plaintiff further reported weakness and a diminished range of motion in both hands and resulting difficulty in performing his job duties with Defendant. Following examination and tests, Dr. DeFranzo diagnosed Plaintiff as having bilateral carpal tunnel syndrome and excused Plaintiff from work beginning March 4, 2004. Plaintiff retired from his employment with Defendant in March 2004.
6. Prior to the filing of his claim in this matter, Plaintiff had been diagnosed with gout, arthritis, hypercholesterolemia, congestive heart failure, underlying idiopathic cardiomyopathy, obesity, atrial fibrillation, hypertension, diabetes, and degenerative joint disease in his knees. As of January 12, 2004, Plaintiff's idiopathic cardiomyopathy and chronic atrial fibrillation, had been ongoing for four to five years. Plaintiff was attempting to obtain long-term disability benefits through Dr. Mark Knudson due to his severe idiopathic cardiomyopathy.
7. Dr. DeFranzo is aware of Plaintiff's prior medical conditions and has opined that his gout and arthritis were aggravated by his employment with Defendant. Additionally, Dr. DeFranzo has opined that the combination of Plaintiff's gout, arthritis and carpal tunnel syndrome has resulted in a significant disability in both hands. However, Dr. DeFranzo is not of the opinion that Plaintiff's employment with Defendant caused his gout or arthritis or that his employment with Defendant exposed him to an increased risk of developing these conditions.
8. Dr. DeFranzo opined that Plaintiff's employment with Defendant caused or significantly contributed to the development of his bilateral carpal tunnel syndrome. Additionally, Dr. DeFranzo has opined that Plaintiff's employment with Defendant exposed Plaintiff to an increased risk of developing bilateral carpal tunnel syndrome as opposed to members of the general public not so exposed.
9. For treatment of Plaintiff's bilateral carpal tunnel syndrome, Dr. DeFranzo recommended surgical release procedures. On June 12, 2004, Dr. DeFranzo performed a release on Plaintiff's left wrist. Dr. DeFranzo medically excused Plaintiff from all work pending an appointment with a rheumatologist and referred him to physical therapy. Dr. DeFranzo recommended performing the right release procedure after Plaintiff had sufficiently recovered from the left release procedure. As of the hearing date before the Deputy Commissioner, Plaintiff had not undergone this right wrist surgical procedure.
10. Dr. DeFranzo continued to treat Plaintiff until September 2004, when he referred Plaintiff to a rheumatologist. As of the date of the hearing before the Deputy Commissioner, a rheumatologist had not treated Plaintiff. In addition, Plaintiff testified that he did not have Medicaid and had been unable to pay for further medical treatment. Dr. DeFranzo testified that Plaintiff had not reached maximum medical improvement, and it would be necessary for a medical professional to evaluate Plaintiff to determine any disability rating Plaintiff may have to his hands after reaching maximum medical improvement.
11. On November 11, 2005, Dr. James Burnette Ph.D., CPE, an Ergonomist, interviewed Plaintiff to determine the repetitive nature of Plaintiff's duties for Defendant. After receiving an explanation of Plaintiff's job duties and the manner in which he was trained to perform them, Dr. Burnette determined that Plaintiff's job duties were repetitive and exposed him to an increased risk of developing bilateral carpal tunnel syndrome as opposed to members of the general public not so exposed.
12. The Full Commissions finds there is insufficient evidence upon which to find that Plaintiff's employment with Defendant caused or significantly contributed to the development of his gout or arthritis. Likewise, there is insufficient evidence upon which to find that Plaintiff's employment with Defendant exposed him to an increased risk of developing gout or arthritis as opposed to members of the general public not so exposed.
13. The Full Commission finds Plaintiff's employment with Defendant caused or significantly contributed to the development of his bilateral carpal tunnel syndrome and exposed him to an increased risk of developing bilateral carpal tunnel syndrome as opposed to members of the general public not so exposed.
14. The Full Commission finds that Plaintiff has not reached maximum medical improvement and that his inability to obtain necessary medical treatment is contributing to the duration of his disability.
15. Plaintiff may have some permanent partial disability or other permanent injury resulting from his compensable occupational disease after he reaches maximum improvement. This issue should be reserved for subsequent determination.
16. Based upon the credible medical and vocational evidence of record, the Full Commission finds that as a result of his bilateral carpal tunnel syndrome, Plaintiff has been unable to earn any wages in any employment since March 4, 2004.
17. Pursuant to the parties Industrial Commission Form 22 Wage Chart, Plaintiff's applicable average weekly wage was $425.45, which yields a compensation rate of $283.65.
18. The medical treatment Plaintiff has received for his carpal tunnel syndrome was reasonably required and tended to effect a cure, provide relief and/or lessen his disability. Plaintiff needs additional medical treatment.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. In order to establish an occupational disease under N.C. Gen. Stat. § 97-53(13), a claimant must show that the employment exposed him to a greater risk of contracting the disease than the public generally.Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983). In addition, the claimant must show that the employment significant contributed to, or was a significant causal factor in, the disease's development. Hardin v. Motor Panels, Inc., 136 N.C. App. 351,524 S.E.2d 368 (2000) (citing Rutledge v. Tultex, supra). Even where the condition was aggravated but not originally caused by the claimant's employment, a claimant must show that the employment placed him at a greater risk for contracting or developing the condition. Futrell v.Resinall Corp., 151 N.C. App. 456, 566 S.E.2d 181 (2002), affirmed percuriam, 357 N.C. 158, 579 S.E.2d 269 (2003).
2. In the instant case, Plaintiff has presented sufficient evidence that Plaintiff's employment with Defendant caused or significantly contributed to the development of his bilateral carpal tunnel syndrome and exposed him to an increased risk of developing bilateral carpal tunnel syndrome as opposed to members of the general public not so exposed. Specifically, Dr. DeFranzo opined that Plaintiff's employment with Defendant caused or significantly contributed to the development of his bilateral carpal tunnel syndrome. Dr. DeFranzo also opined that Plaintiff's employment with Defendant exposed Plaintiff to an increased risk of developing bilateral carpal tunnel syndrome as opposed to members of the general public not so exposed. In addition, Dr. Burnette determined that Plaintiff's job duties were repetitive and exposed him to an increased risk of developing bilateral carpal tunnel syndrome as opposed to members of the general public not so exposed. N.C. Gen. Stat. § 97-53(13).
3. It has been held that when a pre-existing, non-disabling, non-job-related disease is "aggravated or accelerated by causes and conditions characteristic of and peculiar to claimant's employment" so that disability results, the employee must be compensated under the Act.Walston v. Burlington Industries, 304 N.C. 670, 285 S.E.2d 822, asamended, 305 N.C. 296, 297, 285 S.E.2d 822, 823 (1982). Wilkins v. J.P.Steven Co., 333 N.C. 449, 454, 426 S.E.2d 675, 678 (1993), further sharpens the requirement for compensability in this setting: "[I]t must be shown factually that but for workplace aggravation of the non-occupational disease there would not have been the same incapacity for work for which compensation is sought."
4. There is insufficient evidence upon which to conclude that Plaintiff's employment with Defendant caused or significantly contributed to the development of his gout or arthritis or exposed him to an increased risk of developing these conditions. Futrell v. ResinallCorp., 151 N.C. App. 456, 566 S.E.2d 181 (2002), affirmed percuriam, 357 N.C. 158, 579 S.E.2d 269 (2003). Specifically, Dr. DeFranzo opined that Plaintiff's gout and arthritis were aggravated by his employment with Defendant, but Plaintiff's employment with Defendant did not cause his gout or arthritis. Dr. DeFranzo also opined that Plaintiff's employment with Defendant did not expose him to an increased risk of developing these conditions.
5. "The burden is on the employee to show that he is unable to earn the same wages he earned before the injury, either in the same employment or in other employment. The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury." Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Here, Plaintiff has established by the greater weight of the evidence that on March 4, 2004, Dr. DeFranzo took him out of work. Dr. DeFranzo continued to treat Plaintiff until September 2004, when he referred Plaintiff to a rheumatologist. As of the date of the hearing before the Deputy Commissioner, a rheumatologist had not treated Plaintiff. In addition, Plaintiff did not have Medicaid and was unable to pay for further medical treatment and has not had the right wrist carpal tunnel syndrome release surgery that Dr. DeFranzo has been waiting to perform after Plaintiff sufficiently healed from his left carpal tunnel release surgery. Dr. DeFranzo was of the opinion and the Full Commission has found that Plaintiff has not reached maximum medical improvement, and it would be necessary for a medical professional to evaluate Plaintiff to determine any disability rating Plaintiff may have to his hands after reaching maximum medical improvement. Dr. DeFranzo also opined that the combination of Plaintiff's gout, arthritis and carpal tunnel syndrome has resulted in a significant disability in both hands. "Where a claimant is rendered totally unable to earn wages, partially as a result of a compensable injury and partially as a result of a non-work-related medical condition, the claimant is entitled to an award for total disability under [N.C. Gen. Stat.] § 97-29." Counts v. Black DeckerCorp., 121 N.C. App. 387, 390, 465 S.E.2d 343, 345 (1996),citing Weaver v. Swedish Imports Maintenance, Inc., 319 N.C. 243,354 S.E.2d 477 (1987), and Errante v. Cumberland County Solid WasteManagement, 106 N.C. App. 114, 415 S.E.2d 583 (1992). Accordingly, Plaintiff has satisfied the first prong of Russell.
6. Plaintiff's average weekly wage was $425.45, which yields a compensation rate of $283.65. N.C. Gen. Stat. § 97-2(5).
7. As a result of his bilateral carpal tunnel syndrome, Plaintiff is entitled to be paid by Defendant continuing temporary total disability compensation at the rate of $283.65 per week for the period of March 4, 2004 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
8. Plaintiff may have some permanent partial disability or other permanent injury resulting from his compensable occupational disease after he reaches maximum medical improvement. This issue should be reserved for subsequent determination. N.C. Gen. Stat. §§ 97-29; 97-31.
9. Defendant is obligated to continue to pay all medical expenses incurred or to be incurred in the future which are reasonably related to Plaintiff's compensable condition and which tend to effect a cure, provide relief and/or lessen his disability. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to reasonable attorney fees, Defendant shall pay to Plaintiff continuing temporary total disability compensation at the rate of $283.65 per week for the period of March 4, 2004, and continuing until further order of the Commission. From the amounts having accrued, the compensation shall be paid to Plaintiff in a lump sum.
2. Defendant shall pay all medical expenses incurred or to be incurred in the future which are reasonably related to Plaintiff's compensable condition and which tend to effect a cure, provide relief and/or lessen his disability according to Industrial Commission procedure.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded herein is hereby approved for Plaintiff's counsel. The accrued portion of this fee shall be deducted from the accrued benefits and paid directly to Plaintiff's counsel. Thereafter, Plaintiff's counsel shall receive every fourth compensation check from the temporary total disability compensation due Plaintiff.
4. Plaintiff may have some permanent partial disability or other permanent injury resulting from his compensable occupational disease after he reaches maximum medical improvement. This issue is reserved for subsequent determination.
5. Defendant shall pay the costs.
This the ___ day of January 2007.
 S/_____________________ BERNADINE S. BALLANCE, COMMISSIONER
CONCURRING:
 S/______________ THOMAS J. BOLCH, COMMISSIONER
DISSENTING:
 S/_______________ BUCK LATTIMORE CHAIRMAN